# STATE OF MICHIGAN

# COURT OF APPEALS

TEAMSTERS LOCAL 214,

        Respondent-Appellee,

v

TINA HOUSE,

        Charging Party-Appellant.

UNPUBLISHED
September 12, 2017

No. 331767
MERC
LC No. 14-004414

Before: TALBOT, C.J., and O'CONNELL and CAMERON, JJ.

PER CURIAM.

Charging party, Tina House, appeals by right the Michigan Employment Relations Commission (MERC)'s order dismissing her unfair labor practice charge against respondent, Teamsters Local 214. Based on this Court's recent decision in *Saginaw Ed Ass'n v Eady-Miskiewicz*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 329419),[1] we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

House completed an application for membership in Teamsters Local 214 union on August 17, 2000. House also signed a "check-off and assignment" card authorizing her employer, Lapeer County, to deduct fees and union dues from her wages. The card stated:

> This authorization and assignment shall be irrevocable for the term of the applicable contract between the Union and the Company, or for one year, whichever is the lesser, and shall automatically renew itself for successive yearly or applicable contract periods thereafter, whichever is lesser, unless [House] give[s] written notice to the Company and the Union at least 60 days, but not more than 75 days before any periodic renewal date of this authorization and assignment of my desire to revoke same.

---

[1] Consolidated with Docket Nos. 329425, 329426, 329427, 329428, 329429, 329430, 329431, 331398, 331762, and 331875.

Afterward, 2012 PA 349, effective March 28, 2013, amended section 9 of the Public Employment Relations Act (PERA), MCL 423.201 *et seq.*, to state that

> (2) No person shall by force, intimidation, or unlawful threats compel or attempt to compel any public employee to do any of the following:
>
> (a) Become or remain a member of a labor organization or bargaining representative or otherwise affiliate with or financially support a labor organization or bargaining representative. [MCL 423.209(2)(a).]

Further, a labor organization must not "[r]estrain or coerce public employees in the exercise of the rights guaranteed in section 9." MCL 423.210(2)(a).

On December 4, 2013, House sent a letter to Teamsters Local 214 resigning her membership in the union, "revok[ing] any dues deduction authorization that I may have signed that authorizes the deduction of full union dues from my paycheck," and "authoriz[ing] only the deduction of reduced service fees." The letter also stated:

> If and when I cannot lawfully be compelled to pay any union dues and fees as a condition of my employment under Michigan Law, I no longer want to pay any dues or fees to the union. As of that date, I revoke any dues deduction authorization that I may have signed, and no longer authorize the deduction of any union dues or fees from my paycheck.

House also sent a copy to Lapeer County. Upon receipt of this letter, Lapeer County stopped deducting dues and fees from House's paycheck.

On December 13, 2013, Teamsters Local 214 sent House a letter acknowledging receipt of House's request that her "dues and deduction be stopped in accordance with Public Act 349 of 2012." Teamsters Local 214's letter also stated:

> Please be advised that by signing the Check Off Authorization, when you first became a member, you entered into a separate independent contract with this Local Union which supersedes Public Act 349. Provisions of that Agreement do not permit you to revoke your financial obligation at this time, the proper time period is from 6/1 to 6/16, and your letter must be <u>certified</u> to the Local Union President. [(Emphasis in original.)]

However, the collective bargaining agreement between Teamsters Local 214 and Lapeer County expired on December 31, 2013. A tentative, successor agreement did not require employees to pay dues or fees as a condition of employment and stated that Lapeer County would only deduct dues and fees for employees who signed an authorization card after December 3, 2013. Accordingly, House paid no further dues or fees to Teamsters Local 214.

House then filed a charge against Teamsters Local 214, alleging that Teamsters Local 214's letter violated PERA. Both parties moved for summary disposition. An administrative law judge (ALJ) concluded that House failed to state a claim upon which relief could be granted and recommended dismissing House's charge. The ALJ reasoned that Teamsters Local 214's

-2-

letter did not violate PERA because it did not restrain House in her choice to refrain from financially supporting the union, even if it "contained an implied threat to take legal action to collect monies from House." House filed exceptions to the recommendation. The MERC overruled House's exceptions and adopted the ALJ's recommendation.

## II. STANDARD OF REVIEW

However, we review issues of statutory interpretation de novo, giving the MERC's interpretation of PERA "respectful consideration, but not deference." *Saginaw Ed Ass'n*, ___ Mich App ___; slip op at 11. We may not disturb " ' [t]he MERC's legal determinations' " " 'unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law.' " *Id*. at 13, quoting *Grandville Muni Executive Ass'n v Grandville*, 453 Mich 428, 436; 553 NW2d 917 (1996).

## III. ANALYSIS

House argues that the MERC erred in dismissing her charge because PERA requires the ability to revoke union payments at will, she did not waive this right by signing the check-off card in 2000, and that Teamsters Local 214's rejection of her revocation constituted an unfair labor practice. In light of this Court's recent decision in *Saginaw Ed Ass'n*, we agree.

Under facts nearly identical to those in this case, the *Saginaw Ed Ass'n* Court held that the MERC had jurisdiction over the issue of resignation windows even though the issue had "no direct relationship on conditions of employment." *Saginaw Ed Ass'n*, ___ Mich App at ___; slip op at 11-12. "[T]he relationship between union and union members is not strictly contractual in nature." *Id*. at 19. Therefore, the MERC committed no substantial and material error of law when it concluded that union rules limiting resignation to one month out of the year violated PERA, specifically MCL 423.209(2)(a) and MCL 423.210(2)(a). *Id*. at 14-15. Union members did not waive their right to refrain from union affiliation or discontinue financial support of a union by signing membership agreements before enactment of 2012 PA 349 that limited their resignation rights to specific time periods. *Id*. at 16-17. The union's application of resignation windows and refusal to accept resignations constituted an unfair labor practice under PERA, even if the charging party paid no dues after their attempted resignation. *Id.* at 6, 12-15.

In this case, Teamsters Local 214's letter rejecting House's revocation of her financial obligation based on the 15-day time window violated PERA and constituted an unfair labor practice. The MERC may resort to injunctive relief to correct this unfair labor practice. See *id*. at 11.[2]

---

[2] The MERC stated that it would "not interpret a union's statement that funds are owed to it as an unlawful demand, when that statement was made before we issued our decision in *Saginaw* and the statement is based on an agreement lawfully entered into before the enactment of Act 349." However, as shown above, this application of PERA and attempt to distinguish *Saginaw Ed Ass'n* constitutes a substantial and material error of law and deserves no deference.

We reverse and remand.  We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Thomas C. Cameron